# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION

| | |
|---|---|
| CARLA CASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 3-23-cv-00287 |
| GOODWILL INDUSTRIES - ) | |
| KNOXVILLE, INC., ) | |
| ) | JURY DEMAND |
| Defendant. ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is an action alleging disability discrimination in violation of Title I of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §12101 *et seq.*, brought by Plaintiff Carla Cash ("Plaintiff"). Plaintiff is a qualified individual with a disability. Plaintiff alleges that Defendant Goodwill Industries-Knoxville, Inc. ("Defendant"), discriminated against her based on her disability, her record of disability, and Defendant's perception of Plaintiff as disabled, in violation of the ADA. Plaintiff seeks injunctive relief, equitable relief, reinstatement, lost wages and benefits, compensatory damages, and reasonable attorney fees and costs.

### II. JURISDICTION

2. This Court has jurisdiction in accordance with 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title I of the ADA. Plaintiff timely filed her charge of discrimination within 180 days of the occurrence of the last discriminatory act and the Equal Employment Opportunity Commission investigated. On May 18, 2023, the EEOC issued a Letter of Determination and Notice of Rights. Plaintiff timely filed this lawsuit.

## III. PARTIES

4. Plaintiff, Carla Cash, is an individual over the age of 19 years and is a resident of Rutledge, Grainger County, Tennessee. Plaintiff is an individual with a disability, has a history of a disability, and is regarded by Defendant as disabled. Despite this disability, with or without reasonable accommodation, Plaintiff could perform the essential functions of her position. Consequently, Plaintiff is a qualified individual, as defined under the ADA.

5. Defendant Goodwill Industries-Knoxville, Inc. is an "employer" as defined under the ADA and subject to compliance with the ADA. 42 U.S.C. 12111(5). Defendant owns and operates a store in Rutledge, Grainger County, Tennessee.

## IV. FACTUAL ALLEGATIONS

6. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail herein below.

7. On January 8, 2021, Carla Cash applied for a part time job with Defendant Goodwill Industries - Knoxville Inc., ("GIKI") at its store in Rutledge, Tennessee.

8. As part of the application process, Cash identified herself as a person with a disability on GIKI's Voluntary Self-Identification of Disability form.

9. Cash has been diagnosed with spinal stenosis, foraminal stenosis, and degenerative disc disease. As a result of Cash's spinal conditions, she is substantially limited in the major life activities of, inter alia, walking, standing, and lifting.

10. Cash interviewed with the Rutledge store manager, Shelly Greene ("Mgr. Greene").

11. At the time of her interview, Cash explained to Mgr. Greene that she (Cash) had a disability.

12. Cash described the difficulties she experienced because of her disability and said that she might need to sit for a few minutes now and then.

13. Mgr. Greene said that would not be a problem.

14. Mgr. Greene did not ask Cash to provide a doctor's note about her disability or her need for accommodations.

15. No one told Cash that she needed to fill out any additional paperwork related to her request for a reasonable accommodation.

16. Cash was hired and began working shortly after her interview in January 2021.

17. Cash performed her job well.

18. Every once in a while during the workday, Cash would need to sit down. However, Cash continued to perform work-related tasks while sitting, like tagging clothes and running the cash register.

19. No one ever told Cash that alternating between sitting and standing throughout her work-day was a problem.

20. Cash's use of the informal accommodations did not adversely impact GIKI's Rutledge store business in any way.

21. The Rutledge store made a good profit for 2021, which hadn't been done in the past.

22. Because Cash was performing so well, in April of 2022, she was promoted to assistant manager.

23. Cash continued to utilize the reasonable accommodation of occasional sitting without any problem.

24. Cash performed well in the position of assistant manager.

25. Mgr. Greene continued to be the Rutledge store manager (and Cash's direct supervisor) until July 2022.

26. When the position for store manager came open, Cash applied and on or about July 3, 2022, Cash was selected for the store manager position for the Rutledge store.

27. Her pay rate in that new position was set at $9.25 per hour.

28. Because this promotion meant that Cash would be working full time hours and would likely earn just a little above the limit for people who receive SSDI, Cash contacted Brandi Glasscock, the Community Work Incentives coordinator with the Tennessee Disability Coalition. Glasscock told Cash that there was some paperwork that Cash's supervisors could fill out that would allow Cash to continue to work, but to also keep some of Cash's SSDI benefits.

29. Those forms were faxed to Meaghan Johnson, the Vice President of Workforce Development for Defendant.

30. When Cash called Johnson to follow up about completing forms, Johnson said she had no record of Cash having a disability.

31. Cash reminded Johnson about GIKI's Voluntary Self-Identification of Disability, which Cash completed at the beginning of her employment. Cash also

explained to Johnson that she had been getting accommodations since she started working for GIKI in January of 2021.

32. Johnson said Cash needed to have her doctor send Johnson information about Cash's disability.

33. As requested, Cash asked her doctor to fax a note to GIKI about her disabilities and need for accommodation.

34. Cash's doctor's office faxed a letter to Defendant on or about August 19, 2022.

35. On August 23, 2022, the Rutledge store was recognized as being in the top 3 for performance in August e-commerce sales for the region, which contains approximately 30 stores total.

36. The Rutledge store was operating under Cash's leadership in August 2022.

37. Also on August 23, 2022, Cash followed up with Johnson about the disability accommodations letter from her doctor.

38. Johnson responded by phone, telling Cash that she felt Cash's doctor's letter was saying Cash couldn't do any of her job duties.

39. As a result, Johnson told Cash to either quit or resign.

40. Cash said she didn't want to quit or resign. Cash also disagreed with Johnson's understanding of the letter from Cash's doctor.

41. Cash tried to explain how she performed her job as store manager. For example, Cash alternated between walking, standing, and sitting throughout her day with no problems.

42. According to Defendant's safety requirements for all employees, Cash was not supposed to be lifting heavy weights by herself.

43. Cash also told Johnson that, since she started working at the Rutledge store, Cash, along with the other staff, had re-arranged some parts of the store, including the back receiving area, so that it was safer and easier for all employees to do job tasks related to receiving donations and stocking. For Cash, these modifications to the work areas meant that she was able to perform her job within the functional limitations from her doctor.

44. For example, all staff were required to break large bags or boxes of donations down into smaller loads and, in the Rutledge store, staff had rolling bins set up to further reduce lifting.

45. Johnson continued to tell Cash that she felt Cash was not able to complete her job duties.

46. Johnson told Cash to fill out a GIKI form for requesting reasonable accommodations and to get a more specific note from her doctor.

47. Cash immediately contacted her doctor's office to set up another appointment.

48. Cash also filled out the reasonable accommodations form to the best of her understanding and turned it in to Johnson.

49. On August 25, 2022, Johnson emailed Cash and told her to complete a new reasonable accommodation form. Johnson said that Cash could not include "staff" as a reasonable accommodation.

50. Cash was confused. She had utilized the accommodations she tried to describe on the form without issue for a significant time. Additionally, in her experience, all employees working at the Rutledge store had always assisted each other in the store and were supposed to do that according to Defendant's safety guidelines.

51. Since becoming store manager, it was rare for Cash to be in the store alone.

52. If Cash was in the store alone, according to Defendant's policies, she was supposed to prioritize customer service.

53. Customer service tasks could easily be done within the restrictions suggested by Cash's doctor.

54. On September 1, 2022, Cash's doctor sent another letter to GIKI about Cash's disabilities and her ability to work.

55. In keeping with her doctor's note, Cash could have completed the essential functions of her job as store manager with the reasonable accommodations.

56. On September 2, 2022, Johnson called Cash. Johnson said GIKI could not accommodate Cash.

57. Johnson again told Cash that she should either quit or resign.

58. Johnson told Cash that if she quit, and then after Cash got all her doctors' appointments taken care of, Cash could apply to work in e-commerce if there was a position open and if Cash was qualified.

59. Cash said she didn't want to quit, but instead wanted to continue working.

60. Johnson told Cash to call Michelle Bush, Defendant's regional manager for the area, including the Rutledge store.

61. Cash called Bush and asked if GIKI would let her continue working. Cash said she could perform her job within her doctor's restrictions, with the same reasonable accommodations she had been using. Cash reminded Bush that the Rutledge store was performing well.

62. However, Bush kept saying that Johnson believed Cash needed to quit or resign, and, as a result, that's what Bush thought Cash should do.

63. Bush told Cash to turn in her keys and leave the store.

64. Cash continued to say that she did not want to quit or resign and asked if she was being fired.

65. Finally, Bush said "yes, you are being fired."

66. Cash gave her keys to the assistant store manager and left, as requested.

67. At all times relevant to this action, Plaintiff could perform the essential functions of her jobs at GIKI with reasonable accommodations.

68. Neither Johnson nor Bush had ever observed Cash working at the Rutledge store.

69. To the extent that any of Plaintiff's job duties as store manager would have been impacted by her doctor's restrictions resulting from her spinal conditions, Plaintiff could have accomplished the duties with reasonable accommodations.

70. Alternately, there were other jobs at GIKI which Plaintiff could have performed with or without accommodations and in keeping with her doctor's restrictions.

71. Providing reasonable accommodations to Plaintiff would not have been an undue hardship on Defendant.

72. Defendant intentionally discriminated against Plaintiff based on her disability, by failing to reasonably accommodate her, failing to engage in the interactive

process, and by terminating her employment, in violation of the Americans with Disabilities Act, as amended.

73. Plaintiff is an individual with a disability but is able to perform the essential functions of the job of store manager or other positions, with or without accommodation.

74. In denying Plaintiff employment and/or reasonable accommodations related thereto, Defendant intentionally, willfully, and maliciously discriminated against Plaintiff on the basis of her disability, in complete disregard for her federally protected rights.

75. As a result of Defendant's actions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including pain, humiliation, emotional distress, mental anguish and suffering, and loss of enjoyment of life.

## V. CAUSES OF ACTION

### A. Failure to Accommodate in violation of the Americans with Disabilities Act

76. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail herein below.

11

77. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability. See 42 U.S.C. 12102.

78. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

79. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's disability, with or without reasonable accommodation, she is able to perform the essential functions of the job of store manager and other positions. See 42 U.S.C. 12111.

80. Under the ADA, Defendant is prohibited from utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. 12112(b)(3)(A).

81. Defendant violated the ADA by failing to provide Plaintiff with reasonable accommodations. 42 U.S.C. 12112(b)(5)(A).

82. Such accommodations would not have imposed an undue hardship on the operation of the Defendant's business.

83. In failing to provide Plaintiff with reasonable accommodations, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to her disability and her record of disability. See 42 U.S.C. 12112.

84. Defendant has no legitimate, non-discriminatory reason for its conduct.

85. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

**B. Failure to Engage in the Interactive Process in violation of the Americans with Disabilities Act**

86. Plaintiff re-alleges and incorporates by reference paragraphs 1-75 above with the same force and effect as if fully set out in specific detail herein below.

87. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability. See 42 U.S.C. 12102.

88. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

89. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's disability, with or without reasonable accommodation, she is able to perform the essential functions of the job of store manager and other positions. See 42 U.S.C. 12111.

13

90. Under the ADA, Defendant is prohibited from utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. 12112(b)(3)(A).

91. Plaintiff requested reasonable accommodations from Defendant, but Defendant failed to engage in the interactive process and failed to participate in the interactive process in good faith.

92. Defendant violated the ADA by failing to provide Plaintiff with reasonable accommodations. 42 U.S.C. 12112(b)(5)(A).

93. Such accommodations would not have imposed an undue hardship on the operation of the Defendant's business.

94. In failing to engage in the interactive process with the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to her disability and her record of disability. See 42 U.S.C. 12112.

95. Defendant has no legitimate, non-discriminatory reason for its conduct.

96. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

### C. Disparate Treatment in violation of the Americans with Disabilities Act

97. Plaintiff re-alleges and incorporates by reference paragraphs 1-75 above with the same force and effect as if fully set out in specific detail herein below.

98. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability; and Defendant regarded Plaintiff as disabled. See 42 U.S.C. 12102.

99. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

100. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's disability, with or without reasonable accommodation, she is able to perform the essential functions of the job of store manager and other positions. See 42 U.S.C. 12111.

101. Under the ADA, Defendant is prohibited from discriminating against Plaintiff, a qualified individual, on the basis of disability in regard to, inter alia, job training, discharge, and other terms, conditions, and privileges of employment. 42 U.S.C. 12112(a).

102. In terminating the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to her disability, her record of disability, and Defendant's perception of Plaintiff as disabled. See 42 U.S.C. 12112.

103. Defendant has no legitimate, non-discriminatory reason for its conduct.

104. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by Defendant violate Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. ("ADA").

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request, from continuing to violate the ADA.

16

Case 3:23-cv-00287-KAC-JEM   Document 1   Filed 08/10/23   Page 16 of 18   PageID #: 16

3.   Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff reinstatement, back-pay (plus interest), lost benefits, and compensatory, punitive, and nominal damages.

4.   Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

5.   Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is her only means of securing adequate relief.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Dated: August 10, 2023

> Respectfully submitted,
>
> */s/Daniel Arciniegas*
> Daniel Arciniegas
> Arciniegas Law
> 1242 Old Hillsboro Road
> Franklin, Tennessee 37069
> (629) 777-5339

*/s/ Rachel L. McGinley*
Rachel L. McGinley
*(To be admitted Pro Hac Vice)*
Alabama State Bar No.: 1892-A64M
**Wiggins, Childs, Pantazis, Fisher, Goldfarb**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
Email: rmcginley@wigginschilds.com

**DEFENDANT'S ADDRESS**

Goodwill Industries-Knoxville, Inc.
c/o Elizabeth Ann Nother, Registered Agent
5307 Kingston Pike
Knoxville, TN 37919

*/s/Daniel Arciniegas*
OF COUNSEL